# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARK SWANSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 11 CV 4421 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| VILLAGE OF FLOSSMOOR, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff Mark Swanson filed a four-count complaint against the Village of Flossmoor alleging race and national-origin discrimination, retaliatory discrimination, and failure to make accommodations pursuant to the Americans with Disabilities Act (ADA). Now before the court is Flossmoor's motion for summary judgment. For the reasons explained below, the court grants the motion.

### I. BACKGROUND

The following facts are undisputed for the purposes of Flossmoor's motion for summary judgment.

The Village of Flossmoor Police Department employed Mark Swanson as a police officer from January 2000 to September 2009. In November 2006, Swanson was assigned to work in the criminal-investigations unit as a detective. As a detective, he continued to hold the civil-service rank of patrol officer. Swanson continued to work as a detective in the investigation unit until his last day of work on September 30, 2009. After that date, Swanson's only communication with Flossmoor was through its then-Chief of Police, William Miller. On

September 14, 2010, Swanson filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC).

A.   **Swanson's leaves of absence**

On July 31, 2009, Swanson suffered a stroke. He was unable to perform the essential function of his job as a patrol officer or detective from that date until August 19, 2009. Accordingly, Flossmoor approved Swanson for leave under the Family and Medical Leave Act (FMLA) for the period between August 5 and August 19, 2009. During that period, Swanson took sick leave and did not suffer any loss of pay. He then returned to work in the investigations unit on August 19, 2009.

On September 30, 2009, Swanson suffered a "mini stroke." On October 7, 2009, Swanson's doctor wrote a note excusing him from work until further notice. On November 17, 2009, Swanson submitted his FMLA paperwork to the Village. The accompanying certification stated that he was unable to perform the essential functions of his job as a detective and patrol officer beginning on September 30, 2009. Flossmoor approved Swanson's FMLA leave retroactively to September 30, 2009, and Swanson used his accrued benefit time to cover his absence.

Swanson's twelve weeks of FMLA leave expired on December 9, 2009. On December 10, 2009, Miller notified Swanson in writing that his FMLA leave had expired and that his paid-time leave would be exhausted on December 18, 2009. Swanson was given the option to request unpaid leave from the Village Manager. Miller told Swanson that upon his return to work, he would likely be assigned to the patrol division. Miller gave Swanson a copy of the patrol-division job description so Swanson's physician could evaluate his fitness for duty.

Miller assigned Swanson to the patrol division in part because Flossmoor had recently terminated an officer, leaving the Department short-staffed in the patrol division. Ultimately, Swanson never returned to work. At some point, Swanson went to the emergency room for medical treatment. Afterwards, Swanson's physician did not allow him to return to work. When Swanson exhausted his FMLA leave, he sought an unpaid leave of absence until his doctor released him. Flossmoor approved the request through February 6, 2010.

On December 21, 2009, Swanson wrote Miller a letter requesting a disability pension from his initial stroke. Swanson stated that he was unable to resume his duties as a patrol officer and as a detective. The next day, Swanson submitted his disability-pension application to Flossmoor's pension board. The basis for the application was Swanson's inability to perform his duties as a police officer because of the stroke.

In January 2010, Swanson requested an extension of his medical leave of absence. Flossmoor approved the request, extending it until the pension-board ruling. Since the extension, Swanson has not been released to return to work.

**B.     Swanson's disability pension proceedings**

In February 2011, Flossmoor's pension board held a hearing to consider Swanson's application for a disability pension. At that meeting, the board determined that Swanson was unable to return to work to perform his police duties. It found that Swanson was entitled to a non-duty disability pension to be paid retroactively from the date he was removed from Flossmoor's payroll.

In July 2011, the board conducted another hearing to determine whether Swanson was entitled to a line-of-duty disability pension. The board found that Swanson was disabled and entitled to a non-duty disability pension as previously awarded. In November 2011, the board

3

granted Swanson's request for a non-duty disability pension but denied Swanson a line-of-duty pension. As a result, Swanson received his disability pension benefits calculated at his most recent detective pay.

Swanson filed a complaint to review the board's decision in the Circuit Court of Cook County. The court affirmed the board's findings in January 2013. In November 2013, the board found that Swanson remains disabled from performing the full duties of a police officer.

C.     **Swanson's claims of discrimination and harassment**

Swanson's complaint alleges that he was subjected to race and national-origin discrimination in the form of derogatory comments made to him by a superior and co-workers. In the complaint, Swanson identifies two such comments: (1) "What kind of Mexican are you?" because Swanson did not speak Spanish fluently, and (2) "Don't call him Mexican, Puerto Ricans don't like that."

In Swanson's response to the defendants' statement of material facts, Swanson states: "Since the beginning of his career with Flossmoor, officers and supervisors[] made comments about Puerto Ricans and Mexicans including Sergeant [James] Hundley . . ., [then-Deputy Chief Michael] Pulec, [former] Chief Lancaster, [former Deputy Chief] Beddigs, and [Clint] Wagner." (Pl.'s Resp. to Def.'s Stmt. of Mat. Facts ¶ 59, ECF No. 72.)

Swanson alleges that when Hispanics were in lockup, other employees of the police department would tell him, "some of your people are in lockup." (Pl.'s Add'l Facts ¶ 7, ECF No. 72.) Swanson alleges that these comments continued through his last day of work for the department on September 30, 2009.

Swanson also alleges that Beddigs harassed him in 2006 by ordering him to return to return to the police department after completing a training class instead of allowing him to leave

4

early. Swanson chose to take personal-compensation time off and filed a grievance against the order, but the Fraternal Order of Police declined to pursue the matter.

Swanson also alleges that Pulec harassed him multiple times dating back to 2002. The first incident occurred when Pulec, as Swanson's then-supervisor, allowed a patrol car driven by Swanson's trainee to drive out of jurisdiction in a pursuit. During that pursuit, Swanson and his trainee were involved in a serious traffic collision. Swanson then received a three-day suspension.

Swanson further bases his claims of harassment on a 2005 incident in which Pulec was present when Detective Dennis Karner made a comment about state's attorneys not liking Puerto Ricans. Swanson also states that he complained to Pulec many times about Karner's poor handling of evidence and weapons in 2007 and 2008, and that Pulec told Swanson to "clean up Karner's messes." Swanson states that after he complained, he received a write-up himself for Karner's conduct.

Swanson does not identify any remarks made by Flosswood personnel after September 30, 2009, that he believes are harassment or discrimination based on race or national origin.

## II. LEGAL STANDARD

Summary judgment is appropriate when the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009). The court ruling on the motion construes all facts and makes all reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is appropriate when the nonmoving party cannot establish an essential element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

## III. ANALYSIS

### A.  Counts 1 and 3 (race and national-origin discrimination)

Swanson's complaint alleges that he experienced race and national-origin discrimination under Title VII based on being Hispanic and Puerto Rican. Specifically, the complaint states:

> Flossmoor subjected Plaintiff to race discrimination by comments made to Plaintiff by a superior and co-workers about his national origin, Puerto Rican[,] *inter alia*[,] by being told "What kind of Mexican are you?" because Plaintiff could not speak Spanish fluently and "Don't call him Mexican, Puerto Ricans don't like that." . . . Flossmoor failed to comply with [its] statutory duty to take all reasonable and necessary steps to eliminate discrimination from the workplace and to prevent it from occurring in the future.

(Compl. ¶¶ 12-13, 26-27, ECF No. 1.)

A plaintiff must present in his EEOC charge any Title VII claim he wants to pursue in federal court. *See Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 550 (7th Cir. 2002) ("Generally a plaintiff may not bring claims under Title VII that were not originally brought among the charges to the EEOC.") (internal quotation marks omitted). The rule gives the employer notice of the charged conduct and gives the EEOC and the employer a chance to settle the dispute. *Id.* at 550. Claims for discrimination must be filed with the EEOC within 300 days of the alleged unlawful employment practice. *See* 42 U.S.C. § 2000e-5(e)(1); *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 839 (7th Cir. 2014). If a plaintiff fails to file a charge within the 300-day window, his claim is time-barred "and [he] may not recover" in the courts. *Bass*, 746 F.3d at 839.

Flossmoor argues that the court should grant summary judgment in its favor on Swanson's claims for race and national-origin discrimination because Swanson failed to file a charge with the EEOC within the 300-day window. It argues that Swanson had to have filed the charge by July 27, 2010, which is 300 days after September 30, 2009, Swanson's last day of

6

work at the Department. Swanson filed his EEOC complaint on September 14, 2010, more than 300 days after September 30, 2009.

Swanson responds that he remained in contact with Flossmoor through April 27, 2010, and had 300 days[1] from that date to file a charge with the EEOC. Alternatively, Swanson argues in his response brief that Miller's communications with him in December 2009 were discriminatory. The interaction with Miller is the only interaction after September 2009 that Swanson alleges was discriminatory. But Swanson has identified no evidence indicating that Miller made discriminatory remarks toward him. In fact, Swanson does not dispute Flossmoor's assertion that "Chief Miller was always professional to Swanson and . . . never made statements to Swanson that Swanson considered unprofessional or harassing or derogatory." (Def.'s Stmt. of Facts ¶ 15, ECF No. 59.) And Swanson does not dispute that the only interactions he had with department personnel or the City of Flossmoor after September 30, 2009 were with Miller.

The undisputed facts show that any derogatory comments Swanson experienced were made on or before his last day of work on September 30, 2009. For Swanson to be able to proceed on his race and national-origin discrimination claims in court, Swanson would have had to file his EEOC complaint within 300 days of his last day of work, or July 27, 2010. But Swanson filed his EEOC complaint on September 14, 2010—after this 300-day window had passed. Swanson cannot recover now in court based on those comments. Swanson's complaint with the EEOC is untimely as a matter of law. As a result, Flossmoor is entitled to judgment as a matter of law on Counts 1 and 3 of Swanson's complaint.

---

[1] Swanson adds 300 days to April 27, 2010, and arrives at December 26, 2010. (Pl.'s Resp. 12, ECF No. 77.) That calculation is incorrect. 300 days from April 27, 2010, is February 21, 2011. But the miscalculation is irrelevant for present purposes; if Swanson is correct that his 300-day countdown began on April 27, 2010, then his September 30, 2009, filing of his EEOC complaint was timely.

**B.    Count 2 (retaliatory discrimination)**

In Count 2 of his complaint, Swanson complains of retaliation under Title VII based on acts that occurred after his stroke. He alleges that "Flossmoor engaged in retaliatory discrimination *inter alia* in that after the stroke, plaintiff was excluded from investigations; demoted to patrol officer; and had his promotion replaced." (Compl. ¶ 20, ECF No. 1.)

To overcome a motion for summary judgment on a claim for retaliatory discrimination, a plaintiff may proceed by using a direct or an indirect method of proof. *See Vaughn v. Vilsack*, 715 F.3d 1001, 1006 (7th Cir. 2013). Swanson relies on the direct method. Thus, Swanson has to show: "(1) that he engaged in a statutorily protected activity, (2) that he suffered a materially adverse employment action, and (3) that the protected activity is causally related to the adverse employment action." *Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 677 (7th Cir. 2011). Flossmoor argues that Swanson fails to establish any of these elements.

Swanson responds that the complaints he made to Pulec are protected activity for purposes of a retaliatory discrimination claim. Informal complaints may constitute a protected activity, *see Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009), but "[m]erely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient." *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006).

Swanson states that his complaints to Pulec were "regarding Hundley and other officers' conduct toward him." (Pl.'s Resp. 17, ECF No. 77.) In particular, Swanson states that he "complained about Hundley's treatment of him and that he felt that he was being retaliated against by Hundley [and] excluded . . . from investigations." (Pl.'s Stmt. of Facts ¶ 31.) In support of this allegation, Swanson cites an email he wrote to Pulec, which states in part:

8

> Mike,
>
> I am confused about our arrangement with scheduling. In the past, I have changed my schedule for search warrants, court, range training, and interviewing witnesses to avoid overtime. I agreed to this so when I change[d] my schedule there wouldn't be a problem. I was never questioned about changing my schedule when it benefited the department. Well, when I saw you on Friday, you made a comment "when do my detectives come in at 500 am to work". Does this mean our agreement isn't in effect? Can I please have clarification on this matter.
>
> This incident opens a lot of wounds. I went through this type of questioning under a different administration with the same supervisor. It seems like it's retaliation from Sgt. Hundley because I mentioned the lack of communication between the detective division when he excluded me in several cases and you mentioned the word "communication" in our conversation. Is this type of retaliation going to occur whenever I speak my mind?

(Ex. P to Pl.'s Stmt. of Facts 2, ECF No. 72-16.)

Swanson does not explain how a complaint about scheduling and communication with the detective division would implicate Swanson's race, national origin, disability, or any other protected class. Based on the record before the court, no reasonable fact-finder could infer a connection between Swanson's complaints about Hundley and a protected class. Because Swanson cannot establish that he engaged in protected activity, which is a prima facie element of a claim for retaliatory discrimination, Flossmoor is entitled to summary judgment on Count 2 of Swanson's complaint.

**C.    Count 4 (ADA failure to accommodate)**

In Count 4 of his complaint, Swanson alleges an ADA violation for Flossmoor's failure to accommodate his disability when he returned from work after suffering a stroke on July 31, 2009. Swanson argues that "he was not offered any resolution to assist with his condition; he was denied part-time or reduced hours; and he was told that such a part-time or reduced hours program did not exist when in fact it did." (Compl. ¶ 33, ECF No. 1.)

To establish a claim under the ADA for failure to accommodate, a plaintiff must show that: "(1) [he] is a qualified individual with a disability; (2) the employer was aware of [his] disability; and (3) the employer failed to reasonably accommodate his disability." *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005). Flossmoor argues that Swanson was never denied an accommodation. Flossmoor also argues that Swanson is not a qualified individual with a disability, and that judicial estoppel and res judicata bar Swanson's ADA claim. Because the court holds that Swanson was never denied an accommodation, it need not reach Flossmoor's other arguments.

Flossmoor argues that Swanson requested and received two accommodations for unpaid leaves of absence. Swanson responds that Flossmoor's argument misses the point, for these accommodations were made after Swanson's second stroke. Swanson argues that he requested and was denied "light duty" and reduced hours after his first stroke, and that as a result, "Swanson had to use two (2) days a week of medical time to reduce his hours until the end of his employment." (Pl.'s Resp. 20, ECF No. 77.) Swanson does not dispute that he "took sick leave during this time and did not suffer any loss of pay." (Def.'s Stmt. of Facts ¶ 21, ECF No. 59; *see* Pl.'s Resp. to Def.'s Stmt. of Facts ¶ 21, ECF No. 72.)

The EEOC provides that paid leave is a reasonable accommodation. 29 C.F.R. § 1630, App'x (2014) ("[A]ccommodations could include permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment."). Circuit courts, including the Seventh Circuit, have also held that paid leave is a reasonable accommodation. *See Vande Zande v. Wis. Dep't of Admin.*, 44 F.3d 538, 545 (7th Cir. 1995); *see also Hankins v. The Gap, Inc.*, 84 F.3d 797, 801-02 (6th Cir. 1996); *Burch v. Coca-Cola Co.*, 119 F.3d 305, 318 n.11 (5th

10

Cir. 1997) (retaining an employee suspension with full pay may have been a reasonable accommodation).

Swanson cannot show a question of fact as to whether Flossmoor denied him a reasonable accommodation. He requested and received unpaid leave, and he was able to use his medical leave to reduce his hours without reducing his pay. Because Swanson was not denied a reasonable accommodation, he fails to make a prima facie case under the ADA for Flossmoor's failure to accommodate. Flossmoor is therefore entitled to summary judgment on Count 4 of Swanson's complaint.

### IV. CONCLUSION

For the foregoing reasons, the court grants Flossmoor's motion for summary judgment. The clerk is directed to enter judgment in favor of the defendant, Village of Flossmoor and against the plaintiff, Mark Swanson, and to terminate the case.

ENTER:

\_\_\_/s/\_\_\_
JOAN B. GOTTSCHALL
United States District Judge

DATED: September 18, 2014